GEORGE C. KIMBALL, APPELLANT, V. JACOB ZIMMERMANN ET AL., APPELLEES.

FILED JUNE 3, 1897.    No. 7361.

Mortgages: PAYMENT: AUTHORITY OF AGENT: EVIDENCE.   Evidence examined, and *held* to sustain a finding that a mortgagor who had indorsed the notes secured by the mortgage to a third person, had authority as agent of such person to receive payment from the mortgagor.

APPEAL from the district court of Kearney county. Heard below before BEALL, J.   *Affirmed.*

*Dryden & Main,* for appellant.

*J. L. McPheely, contra.*

IRVINE, C.

July 25, 1885, Jacob Zimmermann and wife made two promissory notes to the order of H. Fred Wiley of Kearney, each for $600, and due respectively December 1, 1886, and December 1, 1887.   These notes were secured by mortgage on land then and still belonging to Zimmermann.   Soon after the execution of the notes and mortgage Wiley indorsed and delivered the notes to George C. Kimball, and a few days after the maturity of the first note Zimmermann paid the amount thereof to Wiley, Wiley stating that he had not the note in his possession, but would procure it and deliver it to Zimmermann. When the second note came due both notes were sent by

Kimball to a firm of lawyers in Kearney for collection. Zimmermann then paid the second note, and soon thereafter procured a release of the mortgage from Wiley. In 1892 Kimball began this action to foreclose the mortgage for default of payment of the first note. Zimmermann, by his answer, pleaded payment. The court found for the defendants and dismissed the case. The plaintiff appeals.

The principal question presented is the authority of Wiley to collect the first note. It appears from the evidence that Kimball was, in 1884, in Kearney visiting friends, and there met Wiley, who, after Kimball's return to his home in Michigan, addressed him a letter, evidently in answer to one received from Kimball, but not in evidence, whereby Wiley proposed that he should either make loans on behalf of Kimball, or should borrow money from Kimball and himself lend it at short time. Afterwards a remittance was made by Kimball to Wiley, and Wiley sent to Kimball his note for $2,000, and also the Zimmermann notes together with another, as collateral to the $2,000 note. There seem to have been further advances by Kimball, and another note for $4,000 was executed. Wiley testifies that his understanding was that he was to lend the money, collect it, and relend it, "keeping the securities good" with Mr. Kimball. But it further appears that there was no previous conversation with Mr. Kimball on this subject. The transaction was entirely by mail. Some of the letters are not in the record, and the letters before us leave the matter of Wiley's authority in doubt. From the letters alone we would greatly hesitate to say that any authority was reposed in Wiley to collect notes representing loans made by him from Kimball's money and indorsed to Kimball. There are certain circumstances, however, in the case which persuade us that the finding of the trial court was sustained by the evidence. Mr. Kimball himself testifies that he learned that Wiley had collected the first note in November, 1887. It was soon after that that both notes were sent to lawyers in Kearney for collection. The sec-

ond note was then paid, and there is testimony tending to show that Zimmermann, after paying the second note, said he was going to get the mortgage released by Wiley, and the lawyers said: "That is all right; get it released." It is true that there is no evidence to show authority from Kimball to order the release, but it does not appear that any effort was then made to collect the first note, although Kimball knew at the time that Zimmermann had paid it to Wiley and must have known that Zimmermann supposed he had thereby discharged it.   There is no evidence of any further effort on the part of Kimball to enforce the note against Zimmermann until shortly before this action was brought, although in 1889, in response to a letter from Zimmermann's attorneys demanding the surrender of the note, Kimball wrote that he still held it and would expect the full value thereof.   It also appears that Kimball made efforts to secure a settlement with Wiley, and while these fell short in our opinion of constituting a ratification of Wiley's conduct, provided it had been entirely unauthorized, they still tended to show that Kimball was looking to Wiley rather than to Zimmermann for payment and so tended to that extent to establish Wiley's original authority.   The correspondence leaving it uncertain as to the extent of Wiley's authority, this being a question of fact, and it plainly appearing that Kimball chose to lend money to Wiley for Wiley to relend at short time, in order, as Wiley expresses it, to "make more money than we could in any other way," Kimball knowing for about two years that Wiley had collected the money before informing Zimmermann that he looked to him for payment, his waiting six years before bringing suit, and his waiting one year after the first note became due before making any effort at all to look after its payment, together with his evident attempt to enforce payment from Wiley until he found that remedy ineffectual, all tend to show that his understanding was the same as Wiley's, to-wit, that Wiley should lend money at short time, collect it, and relend it.   While the

evidence is far from being conclusive, the finding of the trial court cannot be disturbed.

AFFIRMED.